```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

KIMBERLY A. EDWARDS,

                Plaintiff,            15-CV-6426

        -v-                           DECISION
                                      AND ORDER
CAROLYN W. COLVIN,
Acting Commissioner OF Social
Security,

                Defendant.
_____
```

Kimberly A. Edwards("plaintiff") brings this action under Titles II and XVI of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("the Commissioner" or "defendant") improperly denied her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "SSA").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is granted and defendant's cross-motion is denied.

## PROCEDURAL HISTORY

On May 8, 2012, plaintiff filed applications for DIB and SSI alleging disability as of June 1, 2011 due to her anxiety and depression. Administrative Transcript ("T.") 167-175, 176-183. Plaintiff's SSI application was initially granted on December 24, 2012, but her DIB application was denied on October 12, 2012.

Plaintiff then requested a hearing before an administrative law judge ("ALJ") and amended her alleged onset of disability date to January 7, 2010. A hearing was held on July 31, 2013 before ALJ Hortensia Haaversen ("the ALJ") and testimony was taken from plaintiff and a vocation expert ("VE"). T. 28-59. The ALJ issued an unfavorable decision on January 14, 2014, denying both DIB and SSI benefits, and plaintiff's request for review was denied by the Appeals Council on May 28, 2015. T. 1-7.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made, *inter alia*, the following findings: (1) plaintiff had not engaged in substantial gainful activity since January 7, 2010, the onset date of her alleged disability; (2) her major depressive disorder without psychotic features and pain disorder with agoraphobia were severe impairments; (3) her impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926); and (4) plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: follow and understand simple directions and instructions and perform simple tasks independently; maintain attention and concentration and a regular schedule; learn new tasks, perform complex tasks independently, and make appropriate

decisions; unable to relate adequately with others or appropriately deal with stress; only occasional interaction with coworkers, supervisors, and the public; perform low stress jobs defined as only occasional decision-making. T. 14-16.

## **DISCUSSION**

I. <u>General Legal Principles</u>

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions

are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).

At the hearing, plaintiff testified that she lived in duplex with her husband, who earned $545.00 per week, and two children, ten and 14 years old. In 2000, plaintiff did housekeeping for a hotel management company for three months and assembly work at the United Refining Company for two months. In 2006, she worked at McDonalds as a shift manager for about three months, and, in 2007, she was a residential house cleaner for three months. In 2011, plaintiff studied cosmetology at the Continental School daily for three months before dropping out.

Plaintiff started therapy for depression and anxiety with a social worker for two years beginning in 2000. She reentered treatment in 2011 and continued to see her social worker once a month. Plaintiff denied that her current prescription medications, which included Atarax, Wellbutrin, Paxil, Ativan, and Naprosyn, caused her any side effects. Plaintiff testified that her depression and anxiety prevented her from working most days, stating:

> I don't want to do [anything]. I just want to close myself off to the world. When I have an anxiety attack, my heart just feels like it's coming out of my chest. I have like a whole bunch of weight on my chest. I start getting shaky and I feel weak to where I'm going to pass out.

T. 42. Crowds of people, including family gatherings, grocery stores and office visits, caused plaintiff to experience anxiety attacks, although plaintiff and her family took a week-long

4

vacation in Myrtle Beach earlier that year. Plaintiff enjoyed participating in arts and crafts, such as bracelet making, sand art, and scrap booking, and watching television on occasion. At the ALJ's request, plaintiff described her activities during the day before the hearing as follows. She got up, took a shower, called the veterinarian's office and took her dog in to "get a pill," and returned home to sit and talk to her children. T. 45. Plaintiff dropped her children off at their grandmother's house around 12:15 P.M. and then attended a mental health therapy session at Genesee Mental Health. She picked up her children after her appointment and went home to start making dinner. She did not eat breakfast or lunch; her children "got their own meals." T. 46. After eating dinner at 7:00 P.M., plaintiff "just sat on the couch" for the rest of the night until she went to bed at 12:30 A.M. T. 46. Some days, plaintiff would "just sit there and just do absolutely nothing." T. 46.

Plaintiff testified that she had difficulty falling and staying asleep most nights. Most days she slept from 8:30 A.M. to 3:00 or 3:30 P.M., when the children were at school. She was able to do housework and grocery shop with her husband once a month. Plaintiff testified that she also had memory problems and lower back pain that sometimes caused her to "get weak and . . . feel like [she is] going to pass out." T. 48-49.

The VE testified in response to the ALJ's hypothetical question whether an individual of plaintiff's age, education, and

5

work background, with no exertional limitations, and was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention, concentration, and a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions but who was unable to adequately relate with others or deal with the stress and was therefore limited to only occasional interaction with co-workers, supervisors and the public and low stress jobs with only occasional decision making could perform her past work and/or three other jobs. The VE opined that such an individual was capable of performing plaintiff's past work as a housekeeper and assembler. The VE further opinion that such an individual could perform the unskilled medium work of a laundry sorter, of which 2.1 million positions exist nationally, and a hand packager, of which 630,000 positions exist nationally, and the unskilled, light work of an inspector and hand packager, of which 145,000 positions exist locally and nationally. T. 55.

II. <u>The Commissioner's Decision Denying Benefits is Not Supported by Substantial Evidence in the Record.</u>

Plaintiff contends that remand is warranted because the ALJ's RFC finding is inconsistent with Dr. Angela Stewart's medical source statement and because the ALJ "mischaracterized" the record evidence and improperly relied on plaintiff's daily activities to determine that she could perform full-time employment. Plaintiff's memorandum of law, p. 14-22. Defendant responds that Dr. Stewart's opinion that plaintiff might experience significant interference in

6

her daily functioning from psychiatric problems was equivocal and that her clinical findings are supported in the RFC assessment. Defendant's memorandum of law, p. 15-25.

The Court concludes, after carefully reviewing the record in its entirety, that the ALJ's decision is not supported by substantial evidence. Moreover, the Court finds that, the ALJ committed legal error by failing to reconcile discrepancies between her RFC assessment and Dr. Stewart's medical source opinion, to which she accorded great weight.

Where an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. *See* Soc. Sec. Ruling 96-8p (1996). Although "the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, she cannot simply selectively choose evidence in the record that supports her conclusions." *Dioguardi v. Comm'r of Soc. Sec.,* 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (internal quotation marks omitted).

Here, the ALJ noted that plaintiff reported to Dr. Stewart that she suffered from, among other symptoms, daily dysphoric moods, crying spells, and feelings of hopelessness. The ALJ further noted Dr. Stewart's findings that plaintiff had poor social skills, mumbled speech, and below average cognitive functioning. However, the ALJ afforded great weight to the portion of Dr. Stewart's opinion finding that plaintiff's expressive language and receptive language skills were adequate, her thought processes

7

were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia, and her attention and concentration were intact with only a mild impairment of recent and remote memory skills.

The record further reveals that Dr. Stewart, Ph.D., a consultative examiner, diagnosed plaintiff with major depression without psychotic features-severe, and panic disorder with agoraphobia during her one-time October 11, 2012 evaluation. Dr. Stewart's examination revealed that plaintiff was cooperative but exhibited poor social and relating skills overall, and her affect was dysphoric, depressed, and apathetic. Her attention and concentration appeared to be intact, and she was able to do counting and simple calculation. Plaintiff's recent and remote memory skills were mildly impaired due to emotional stress; her cognitive functioning was below average, with an appropriate general fund of information; and her insight and judgment were fair. Plaintiff reported that she was able to dress, bathe, and groom herself, cook and prepare food, do general cleaning, laundry, shopping, managing money, driving and take public transportation. Apart from getting her children ready for school and bed and preparing dinner, plaintiff spent her day sleeping and watching television or eating. Dr. Stewart found that plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independent, make appropriate

decisions, and manage her own funds. However, Dr. Stewart opined, however, that plaintiff was unable to maintain attention and concentration, relate adequately with others, or deal with stress appropriately due to her depression. Dr. Stewart further opined that the results of her evaluation were consistent with "psychiatric problems," which could "significantly interfere with [plaintiff's] ability to function on a daily basis." T. 326. Dr. Stewart assessed plaintiff's prognosis to be fair and recommended psychiatric intervention and vocational training and rehabilitation.

It is clear in the ALJ's decision that she chose to disregard portions of Dr. Stewart's opinion that were supportive of plaintiff's application for benefits. Although the ALJ is entitled to accept and reject portions of the medical source opinion, she failed to adequately set forth her basis for disregarding those portions of Dr. Stewart's opinion that are in conflict with her RFC assessment. Consequently, because the Court is unable to determine why the ALJ chose to disregard opinion evidence that was more favorable to plaintiff's claim, remand is warranted.

This error is compounded by the ALJ's inexplicable assignment of great weight to the finding of state agency psychological consultant R. Noble, Ph.D., that there was insufficient evidence to assess plaintiff's ability to function during her application period. There is therefore no rational basis for the ALJ's determination that Dr. Noble' opinion, or absence of opinion, was

9

supported by the "lack of evidence showing any significant functional limitations period to [plaintiff's] date last insured." T. 19.

Moreover, the ALJ gave little weight to the other source opinion of licensed social worker Eileen Ersteniuk, who engaged plaintiff in ten therapy sessions from 2007 to 2013, because her opinion was "inconsistent with the treating physician's assessment indicating that [plaintiff's] anxiety was under control and was based on only four treatment sessions. Ms. Ersteniuk's July 13, 2013 mental residual functional capacity questionnaire concluded that plaintiff was: (1) seriously limited in her ability to understand, remember, and carry out very short and simple instructions and maintain attention for two-hour segments; (2) unable to meet competitive standards for remembering work-like procedures, maintaining regular attendance, being punctual within customary tolerances, being aware of normal hazards, sustaining an ordinary routine without special supervision, making simple work-related decisions, performing at a consistent pace without an unreasonable number and length of rest periods, asking simple questions, requesting assistance, accepting instructions, responding appropriately to criticism from supervisors and to changes in a routine work setting, getting along with coworkers and peers without unduly distracting them or exhibiting behavior extremes, dealing with normal work stress and taking appropriate

precautions; and (3) moderately limited in activities of daily living, maintaining social function, concentration, persistence, or pace.

Ms. Ersteniuk also opined that plaintiff had experienced one or two episodes of decompensation, of at least two weeks' duration, within a 12-month period and would be expected to miss more than four days of work per month due to her impairments or treatment. Plaintiff would likely "decompensate" and experience "increased depression and anxiety" symptoms if she worked a full-time position. T. 401. Ms. Ersteniuk noted, however, that plaintiff was "inconsistent with therapy appointments" and "a malingerer," and she recommended a "full psychiatric exam/evaluation." T. 401-402. The ALJ concluded that Ms. Ersteniuk's "overly restrictive opinion" was "simply inconsistent with the independent consultative examiner's findings." T. 20.

The record also contains a number of treatment notes written by Laura Moore, a registered physician's assistant, who began treating plaintiff for depression beginning in April 2009. Although nurse practitioners are "non-acceptable medical sources," Ms. Moore's opinion "may be used 'to show the severity of the [plaintiff's] impairment(s) and how it affects the [her] ability to function.'" *Beckers v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014), quoting SSR 06-3p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). "[A]lthough a nurse practitioner's opinion is not entitled

11

to the same weight as a treating physician, [it is] entitled to 'some extra consideration,' when the nurse practitioner has a treating relationship with the patient." *Id.*, quoting *Mongeur*, 722 F.2d at 1039 n. 2.

Here, plaintiff was regularly treated by Ms. Moore from April 2009 to at least 2013, which included prescribing plaintiff medication. The record reveals that as of August 2009, plaintiff reported to Ms. Moore an overall mood improvement with taking prescription medications Celexa and Atarax. However, in January 2010, Ms. Moore diagnosed plaintiff with recurrent major depression and panic disorder with agoraphobia and added a prescription for Venlafaxine. Plaintiff reported feeling irritable, tired and depressed, although the Atarax improved her panic attacks and sleep problems. Plaintiff returned to Ms. Moore on February 2, 2012 and reported difficulty sleeping, poor concentration, and increased panic attacks, also revealing that she had dropped out of school with no desire to return. In March 2012, after plaintiff reported to Ms. Moore that her symptoms were unchanged and that the Venlafaxine was not helping, Ms. Moore added a prescription for Wellbutrin. In April 2012, plaintiff reported that her depression and concentration had improved with the use of Wellbutrin but that she had anxiety attacks "sometimes" when she left her home. Plaintiff had recently returned from a Florida vacation where she stayed primarily in the hotel or pool area. By May 2012, however,

plaintiff reported that she had not had any recent panic attacks.

During her June to September 2012 treatment sessions with Ms. Moore, plaintiff reported sleeping well, feeling 40 to 50 percent better, and being free of panic attacks. Ms. Moore increased plaintiff's Wellbutrin dosage but noted that her anxiety was controlled. The record reveals that plaintiff continued treatment with Ms. Moore once a month from August 21012 to March 2013. In December 2012, plaintiff reported "comfort with current management" of her depression. Through the winter of 2013, however, records reveal that her disorder had worsened due to family and marital problems. By March 2013, plaintiff reported "mixed emotions," low interest and ambition and difficulty sleeping, although her anxiety was deemed to be "under control." T. 393.

Plaintiff was also treated by Patricia Wyjad, LMSW, in July 2013 and was diagnosed as being depressive and having anxiety disorders. She assigned a global assessment of functioning ("GAF") score of 55 and recommended therapy and medication management. Ms. Wyjad observed that plaintiff's thought content was goal-directed, noting that she showed fair insight, appropriate judgment, and intact short and long-term memory, with a depressed mood.

After the ALJ's decision denying benefits was issued, plaintiff submitted treatment records from Ms. Wyjad to the

13

Appeals Counsel indicating unchanged clinical findings and notes from three treatment sessions held between September and December 2013. Plaintiff reported her continued low mood, irritability, and anxiety, which were affected by negative social interactions and marital problems. Ms. Wyjad noted that plaintiff reported participating in family outings and activities, including shopping and attending a football game. Plaintiff also submitted treatment notes from January 2014 in which registered nurse Monika Qulstorf, RN, noted that plaintiff's mood was mildly constricted and anxious but stable, and she exhibited a cooperative attitude, good eye contact, appropriate behavior, speech and affect, logical thought processes, goal-directed thought content, and intact long and short-term memory.

In light of the record evidence, considered as a whole, and the errors contained in the ALJ's decision, the Court concludes that the case must be remanded for further proceedings. On remand, the ALJ is directed to discuss Ms. Moore's opinion concerning plaintiff's condition and explain, in accordance with SSR 06-03p, how her opinion was or was not incorporated into the RFC assessment, and request, if necessary, a mental status evaluation. *See Calzada v. Asture*, 753 F. Supp. 2d 250, 275 (S.D.N.Y. 2010). The ALJ is further directed to explain the incorporation of any portions of the medical source statements into the RFC that are unfavorable to plaintiff, "particularly when the inclusion of other

14

statements that have been assigned equal or greater weight would be favorable to plaintiff." *Dioguardi,* 445 F. Supp. 2d at 300.

## **CONCLUSION**

Plaintiff's motion for judgment on the pleadings (Docket No. 9) is granted, and defendant's cross-motion for judgment on the pleadings (Docket No. 13) is denied. The case is remanded for further administrative proceedings consistent with this Decision and Order.  The Clerk is directed to close the case.

ALL OF THE ABOVE IS SO ORDERED.

S/ MICHAEL A. TELESCA
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
       September 21, 2016